BOARD OF COMMISSIONERS OF FORSYTHE COUNTY *v.* JOHN BLACK-BURN.

The judicial powers of the late county courts are given by the Constitution of 1868, to the Superior Courts and the administration of the municipal affairs of the counties to the boards of county commissioners.

The Superior Courts have the right to amend the records, technically so-called, that is relating to their judicial action as Courts proper of the late county Courts.

Superior Courts will not compel the Clerk of the Superior Court, who has the legal custody of the records of the late county courts to surrender such records to the Board of County Commissioners to be altered by said commissioners.

Entries on the books of the County Courts in relation to a vote of the people on the question of subscription or no subscription to the stock of a railroad company, and the action of said Court in relation to such subscription, and as to the Justices who were present, although not records, are written evidence, which the public and third persons may have an interest to preserve in its original integrity.

MANDAMUS, tried before *Cloud, J.,* at Chambers, 21st November, 1872.

The proceeding was by summons and complaint, and was to obtain a writ of mandamus, to compel John Blackburn, the defendant, as clerk of the Superior Court of Forsythe county, to deliver to the plaintiff the records of the late County Court of Forsythe county, concerning the subscription of said county to the capital stock of the North Western North Carolina Railroad Company.

An ordinance of the Convention of the State, passed 9th of March 1868, authorized the question to be submitted to the people of said county, whether they would subscribe one thousand shares to the stock of said company, and in pursuance of said ordnance, the Justices of Forsythe met at the Court House in Winston, on the 24th of March, 1868, and as the record states, a majority were present and made the order submitting the question of " subscription," or " no subscription."

An election was accordingly held, and the sheriff of the

county reported that a majority of the votes cast were in favor of subscription, and the Justices of the County Court, a majority being present at the regular June Term, 1868, received the report and appointed an agent to subscribe for one thousand shares of stock in said company. The agent made the subscription and bonds, were caused to be issued by said Justices, to pay said subscription and were sold. Afterwards taxes were levied and collected to pay the interest on said bonds. The defendant refused to obey an order of plaintiff to give up the records, and plaintiff asks for this writ to compel the defendant to surrender said records, so that they may be altered by the clerk of the plaintiff, so as to state that a majority of the Justices of Forsythe *were not* present at the said meeting of said Justices on the 24th of March, 1868, and at the said June Term, 1868, and that certain Justices *were not* present, who are stated in the record to have been present.

The defendant admits the subscription and issue of bonds, and avers that a majority of the Justices *were present*, and that the Justices alleged to have been absent were not absent, and that the action of the Justices was in all respects in accordance with law; that he refused to obey the order of the plaintiff, because he was advised and believed that he could not lawfully surrender the records, and that plaintiff had no authority to amend the records as proposed by plaintiff. The holder of the bonds had no notice of this proceeding.

His Honor refused to grant the prayer of the plaintiff, and gave judgment for defendant.

Plaintiff appealed.

, for appellant.

, contra.

RODMAN, J.   The County Courts which existed prior to

the Constitution of 1868, had a certain strictly judicial power. They were properly Courts. In addition to this they were invested with certain administrative powers over the municipal affairs of their counties, among others, with that of making contracts on their behalf, either first submitting the question to a vote of the people, or not, as the law might direct. By the Constitution these Courts were abolished; their judicial powers were given to the Superior Courts, and the administration of the municipal affairs of the counties to the boards of county commissioners.

This Court has decided that the Superior Courts are the successors to the judicial powers of the county courts, have the right to amend their records technically so-called, that is relating to their judicial action as Courts proper. *Foster* v. *Woodfin*, 65 N. C., 29. *Stanly* v. *Massengill*, 63 N. C. 558. *Mason* v. *Miles*, Id. 564.

It must be implied that no other body has that right. If therefore the action of the County Court of Forsythe, in declaring that a majority of the voters of the county had voted in favor of issuing the county bonds, was judicial action, and the entry on its minutes to that effect, and that a majority of the Justices was present and concurred in that declaration, and in the issuing of the bonds is a judicial record; then it follows that the Superior Court has the right upon a proper proceeding to amend that record; and the present plaintiffs have no such right, and their action must consequently fail. To show that the action of the Justices in the instance in question was judicial, or at least so far partook of that character that the entry of it had the force and effect of a judicial record, we were referred to *State* v. *McAlpin*, 4 Ire. 140. *State* v. *King*, 5 Ired. 203.

These cases certainly establish that an entry of the action of a County Court in taking the official bond of a sheriff and of a constable, was considered a record technically and strictly. But the inference is not a necessary one, that an

entry representing a contract for building a bridge or any similar matter would also have been so considered. At all events, in these cases no question as to the character of the entry with reference to the distinction we are now making was made by the parties or considered by the Court. We do not think they can be deemed authorities, for any purpose in this case.

The plaintiff's action is apparently founded on the idea that while the entries of the County Courts made in the course of their judicial duty are technically and properly records, yet those which concern merely its municipal action are not records but in the nature of entries on the books of a municipal corporation, and that as they have succeeded to the municipal powers of these Courts, their entries so far they relate to these affairs must be in the power and control of the plaintiffs. It is only upon such a proposition that the plaintiffs can put their claim with any plausibility. Notwithstanding that we have not seen in any of our reported cases, any suggestion of such a difference between entries made by the same body and in the same books, turning upon the difference of the subject matter, yet we are inclined to think the distinction a just one. It remains to be seen if it can avail the plaintiffs.

The difference in the character and effect of records of a Court, and entries in the books of a corporation whether municipal or private, is very great. The records of a court import absolute verity as to all the world; they cannot be collaterally impeached or contradicted. If from accident or inadvertence they speak more or less than the truth, they may be amended so as to speak the truth by the Court which made them, or by any which has succeeded to its jurisdiction, but by no other. No amendment will be made except after notice to all persons interested; none will be allowed which will injure, that is, unjustly affect third persons, and an appeal will lie from any order for an amend-

ment irregularly made, that is, not made according to the course and practice of the Court established by a long series of adjudications upon principles of justice and reason.

Entries on the books of a corporation do not import absolute verity, they are evidence between the corporators, and and in certain cases between strangers; but in general they are not conclusive even between the corporators, except where they have the effect of an estoppel. Cole on Crim. Infor. and Quo. Warranto 227. They may be altered, but they cannot be amended in the sense in which that word is applied to judicial records, and there exists no such safeguards against false and fraudulent alterations, as protect judicial records. There need not be notice to any one; the law has provided no way by which persons interested to oppose the alteration may be heard against it, and no appeal will be from it to any Court. If altered, proof of their original condition, and of the circumstances of the alteration, would be always admissible. But although these entries are not records, they are written evidence which the public and third persons may have an interest to preserve in its original integrity. Whether or not a municipal or private corporation may alter its entries or minutes relating to a contract at will, it is not necessary to consider. Perhaps, being in possession of the books of entries, a Court would not generally interfere to prevent it, although cases may be conceived in which probably it would interfere in some way. But the plaintiffs cannot put their claim to alter these books, on the ground of possession or property; for the possession and custody are by statute vested in the Clerk, and the property is in the State.

What the plaintiffs demand is that the Superior Court shall compel the Clerk to allow them to alter the original entries of the County Court upon the matters in question, by erasure, interlineation, or otherwise, so as to make them state respecting a matter of fact in which third persons are

interested differently from what they now do.   The proposition is in effect to destroy, mutilate or obscure those entries as evidence of a past transaction.   The plaintiffs do not demand that they be altered so as to speak the truth as the Court may find it to be; because if they had desired only that, they would have moved the Court to amend, when the truth of the fact could have been inquired into by the Court, and (supposing the jurisdiction of the Court) the amendment would be made accordingly.   But they desire to alter the entries to make them conform to the truth as they have determined it to be; which in substance is to alter it at their discretion.   For although the alteration they wish to make at present is set out, yet upon this application the Superior Court has no jurisdiction to inquire into its truth or propriety, and if it should grant this, it would on the same principle be compelled to allow any alteration which the plaintiffs might desire to make.   Such alterations, if accompanied with a fraudulent intent, which we do not suppose to exist in the present case, would be spoliation of evidence. In its best aspect, it is but an attempt to obliterate or obscure evidence, the force and weight of which, whatever it may be, should not be changed *ex parte*, and no Court will lend its aid in doing so.

PER CURIAM.                        Judgment affirmed.