INEZ S. ROBERTSON, PETITIONER v. MARION P. ROBERTSON AND WIFE, BONNIE ROBERTSON, RESPONDENTS

No. COA96-839

(Filed 20 May 1997)

## 1. Partition § 69 (NCI4th)— tobacco farm—separately owned tobacco allotment—fairness of division

The trial court did not err by failing to consider one joint property owner's separately owned tobacco allotment in assessing the fairness of the division of farm property by partition,

ROBERTSON v. ROBERTSON

[126 N.C. App. 298 (1997)]

although the trial court could have considered the tobacco allotment, where there was evidence that the separately owned allotment was marketable, and the joint owner assumed the risk of losing the cropland needed to grow the allotment when he purchased the allotment and placed it on property which he did not solely own.

**Am Jur 2d, Partition § 134.**

**2. Partition § 79 (NCI4th)— assignment of parcels by flipping coin**

It was not error for the court-appointed commissioners to assign partitioned property to the parties by flipping a coin once the property was properly divided into two segments of equal value.

**Am Jur 2d, Partition §§ 216 et seq.**

**Judicial partition of land by lot or chance. 32 ALR4th 909.**

Appeal by respondents from judgment and order filed 5 March 1996 by Judge Melzer A. Morgan, Jr., in Rockingham County Superior Court. Heard in the Court of Appeals 1 April 1997.

*Walker, Melvin & Berger, by Philip E. Berger; and Holt & Watt, by Clark M. Holt, for petitioner.*

*Smith, Helms, Mulliss & Moore, L.L.P., by Jim Exum, Jr., and John J. Korzen; and R. Walton McNairy, for respondents.*

GREENE, Judge.

Marion P. Robertson (M.P. Robertson) and Bonnie Robertson (respondents) appeal a judgment and order of the superior court confirming the Report of Commissioners partitioning in kind real property held by Inez P. Robertson (petitioner) and respondents.

M.P. Robertson and Albert Robertson jointly owned property in Rockingham County which was primarily used to farm tobacco. After Albert Robertson died, his wife (petitioner), inherited his share of the property as well as one-half of the jointly owned tobacco allotment of 10,737 pounds. After Albert's death, M.P. Robertson operated the farm with the assistance of his son. Although petitioner did not participate in the farm's operation she continued to get a percentage of the farm's

yield. In 1987 M.P. Robertson purchased an additional tobacco allotment in his own name of 12,706 pounds and placed that allotment on the jointly held property for a total allotment on the jointly held property of 23,443 pounds.

Petitioner filed a petition in 1993 in the Superior Court of Rockingham County to partition the real property held as tenants-in-common with M.P. Robertson. After a hearing before the Clerk of Superior Court of Rockingham County an order was entered on 19 May 1994 requiring that the property be partitioned in kind. Specifically, the order found that petitioner and M.P. Roberston each owned a one-half interest in the property and that "there is substantial land . . . and adequate cropland so that division can be made without substantial injury to the parties." On appeal to the superior court, by judgment filed 19 August 1994, the court decreed that petitioner was entitled to a partition in kind "as said Partition . . . can be accomplished without substantial injury to either" party and "it being understood that the tobacco pounds alloted [sic] to said realty which <u>were not</u> jointly owned shall be the property of [M.P. Robertson]."

Pursuant to N.C. Gen. Stat. § 46-7 (1984) three commissioners were appointed by the superior court to partition the property "fairly and equitably." By report of 2 October 1995 the commissioners "did allocate the subject properties into two portions of equal value and then by the toss of a coin in the presence of a witness they did allocate the two portions as follows:" parcels A (19.89 acres) (including a migrant worker house) and D (5.11 acres) (54.74% of the cropland) and 54.74% of the jointly owned tobacco allotment going to petitioner; parcels B (4.17 acres), C (21.26 acres), and E (5.11 acres) (45.26% of the cropland), a non-contiguous 11.97 acre wooded tract and 45.26% of the jointly owned tobacco allotment going to respondents. Respondents appealed and by order of 29 December 1995 the commissioners' partition was confirmed by the Clerk of Superior Court.

On appeal to the superior court (from the clerk), a hearing was held at which evidence was presented revealing that the commissioners visited the property on more than one occasion and "gathered . . . information from the County Tax Office and the County Planning Department" and the County Farm Office. They also prepared survey maps of the property showing the acreage of the croplands and the wooded tract of property. The commissioners considered the jointly owned tobacco allotment but "did not consider [M.P.

Robertson's separately owned allotment] in any form or fashion in the division of the property."

Henry Sands (Sands), a certified real estate appraiser who has had experience in appraising tobacco farms, examined the property and gave the opinion that relative values of the two parcels of land were "real close." According to Sands, when determining the value of the property "only the joint tobacco allotment would be taken into account, not the solely owned." Sands stated that as to respondents' tobacco allotment that could not be grown on their own land, the allotment could be sold, put on other property, or put on land that is leased from another farm.

Evidence for respondents revealed that respondents operate five different tobacco farms. M.P. Robertson and Albert Robertson purchased a portion of the jointly owned property in 1961 and the remainder in 1965, to be used for tobacco farming. Because there is a shortage of local labor, respondents must rely on migrant workers, and without the migrant worker house that was assigned to petitioner respondents will "not be able to collect the [tobacco] crop." Respondents spent $3,641.31 to make improvements to the migrant worker house. It will cost $2,000 to move one of the "bulk barns" (located on parcel A) that is owned by M.P. Robertson and necessary to farm tobacco because it is located on petitioner's half of the property. Before the partition respondents were able to raise two-thirds of their acreage for tobacco production on the jointly held property but after the partition, due to new regulations, respondents will only be able to raise one-half of the acreage. If a certain percentage of a tobacco allotment cannot be used, the owner of that allotment risks forfeiture of it. The allotment, however, can be sold or transferred to another farm currently owned or purchased for that reason. After the division respondents will not be able grow all of their allotment due to a lack of croplands, but petitioner will have surplus acreage on which to grow her allotment.

Howard Gentry, an appraiser, determined that the two divided parcels were of approximately the same value. Howard Williams, also an appraiser, valued the tobacco allotment at two dollars per pound. He also valued the migrant worker house at $10,000 dollars and determined that the total value of the property, exclusive of the noncontiguous wooded lot of 11.97 acres, was approximately $102,000 or approximately $1,850 per acre. The wooded lot was valued at approximately $5,900.

Following the hearing, the court made the following uncontested pertinent findings of fact: (1) the property to be divided consists of acreage and a tobacco allotment of 10,737.352 pounds; (2) M.P. Robertson separately purchased tobacco allotments in 1987 consisting of 12,706.648 pounds; (3) both the jointly owned and the separate allotments have been grown on the jointly owned property from the time the separate allotment was purchased through 1994; (4) a tobacco allotment is a commodity that is marketable separate from real property and may be sold to third parties or transferred to other property; an allotment must be attached to real property that qualifies for such allotment under the United States Department of Agriculture and Consolidated Farm Service Agency rules and regulations; the size of a tobacco allotment which may be attached to real property is based, in part, on the amount of cropland on the real property; (5) there is a total of 23.31 acres of cropland on the jointly held property; (6) M.P. Robertson and his family have grown and marketed the jointly owned tobacco allotment, from which petitioner received 10% of the gross amount obtained from the sale of the jointly owned tobacco; (7) a house for migrant workers is located on parcel A and used by respondents' farming operation, including farming on property other than the jointly owned property in question; (8) there was no injury to respondents by awarding parcel A, including the migrant worker house, to petitioner; (9) respondents' farming operation will be adversely affected by the partition in the following ways:

(a) The farming operation will not be able to grow all of the separate allotment owned by [M.P. Robertson] on the real estate allotted to Respondents;

(b) The overall production of tobacco and other crops may be reduced unless the separate allotment is transferred to other land that can be used in the farming operation. Evidence presented at this hearing indicates that there is little farm land available for sale in the area of the subject farm;

(c) A bulk barn will need to be moved;

(d) Different housing arrangements will need to be made for migrant workers.

(10) the property allotted to petitioner has a value of $75,408.57 and the property allotted to respondents is valued at $76,806.44.

The trial court also found that there is "no relevant or material adverse monetary affect to the jointly owned property as a result of"

ROBERTSON v. ROBERTSON

[126 N.C. App. 298 (1997)]

the partition and "the division is fair and equitable." Respondents assigned error to both of those findings.

In conclusion, the trial court held the partition to be fair and equitable and M.P. Robertson's separately owned tobacco allotment was not part of the property and it was not necessary to take that allotment into account when determining an equitable partition. The trial court then confirmed the Report of Commissioners.

The issues are whether (I) it was an abuse of discretion in this partition proceeding not to consider M.P. Robertson's separately owned tobacco allotment when evaluating whether the partition was "fair and equitable"; and (II) it was proper to assign the partitioned property by the flip of a coin.

I

[1] Respondents argue that the partition "resulted in an injurious, unfair and inequitable division of the property as to respondents" because it "ignore[d] M.P. Robertson's separately owned tobacco allotment." We disagree.

Whether a partition in kind is "fair and equitable" is a "question of fact to be determined by the [j]udge of the [s]uperior [c]ourt upon an appeal from a judgment of the clerk affirming the report of commissioners." *West v. West*, 257 N.C. 760, 762, 127 S.E.2d 531, 532 (1962); N.C.G.S. § 1-272 (1996) (appeals from clerk are to superior court, except in adoption proceedings). On appeal from a partition of land, the findings of the judge of the superior court "are conclusive and binding if there is any evidence in the record to support them," *id.*, even when there is evidence supporting a finding to the contrary. *See Raynor v. Odom*, 124 N.C. App. 724, 729, 478 S.E.2d 655, 658 (1996).

"A tenant in common is entitled, as a matter of right, to an actual partition of the land." *Partin v. Dalton Property Assoc.*, 112 N.C. App. 807, 810, 436 S.E.2d 903, 905 (1993). Pursuant to Chapter 46, "Partition," upon the filing of a petition for partition in kind, the superior court "shall appoint three disinterested commissioners to divide and apportion such real estate." N.C.G.S. § 46-7 (1984). "Tenancy in common in land is [a] necessary basis for maintenance of special proceeding[s] for partition by petition to the [s]uperior [c]ourt." *Murphy v. Smith*, 235 N.C. 455, 462, 70 S.E.2d 697, 702 (1952); *see* N.C.G.S.

§ 46-3 (only those persons claiming real estate by joint tenants or tenants in common "may have partition by petition to the superior court").

When partitioning property, the commissioners "must meet on the premises and partition the same among the tenants in common, or joint tenants, according to their respective rights and interests therein, by dividing the land into equal shares in point of value as nearly as possible." N.C.G.S. § 46-10 (Supp. 1996). When performing this task, such factors as M.P. Robertson's separately owned allotment *may* in the discretion of the commissioners be considered, however, such consideration is not required. *See Gray v. Crotts*, 58 N.C. App. 365, 368, 293 S.E.2d 626, 628 (1982) (courts *may* consider whether one of the tenants in common owns other land adjoining land to be partitioned). When "matters are left to the discretion of the trial court, appellate review is limited to a determination of whether there was a clear abuse of discretion." *White v. White*, 312 N.C. 770, 777, 324 S.E.2d 829, 833 (1985). The trial court will be reversed for abuse of discretion only where its actions were manifestly unsupported by reason. *Id.*

In this case the evidence supports the finding that pursuant to section 46-10, the property was divided into two approximately equal valued shares; the land allotted to petitioner was valued at $75,408.57 and the property allotted to respondents was valued at $76,806.44. Further, although the trial court could have considered M.P. Robertson's separately owned tobacco allotment in assessing the fairness of the division of the property, it was not required to do so and this record does not show the decision to have been manifestly unsupported by reason. Not only is there evidence that the allotment owned by M.P. Robertson was marketable but he assumed the risk of losing the cropland (necessary to grow the allotment) when he purchased the allotment and placed it on property which he did not solely own.

Furthermore, the evidence in this record supports the ultimate finding entered by the trial court that the partition was fair and equitable. The evidence reveals that the commissioners closely examined the property, properly taking into account the jointly owned tobacco allotment, and partitioned the property into two parcels of relatively equal value as required pursuant to section 46-10. More than one real estate appraiser gave the opinion that the two parcels were of equal value.

PELZER v. UNITED PARCEL SERVICE

[126 N.C. App. 305 (1997)]

Because there is competent evidence supporting the finding that the commissioners' division of the property was "fair and equitable" we are bound by that finding on appeal.

II

[2] Respondents also argue that it was error to allow the property, once it had been partitioned, to be assigned to the parties based on the flip of a coin. Respondents argue that using such method unfairly allowed petitioner to receive almost 55% of the cropland, including the migrant worker's house, even though it was the respondents, and not petitioner, who had been farming the property.

This Court has approved the assignment of shares to tenants in common by lottery, or drawing of lots. *Gray*, 58 N.C. App. at 370, 293 S.E.2d at 629. Specifically, this Court held that "[w]hen there is no question that parcels have been equally divided in terms of value, this Court has specifically approved the drawing of lots as a method of assigning the shares to tenants in common." *Id.*

The Commissioners divided the property into two sections that are equal "in point of value as nearly as possible," N.C.G.S. § 46-10, and thus assigning the property by flipping a coin was not improper.

Affirmed.

Judges WYNN and TIMMONS-GOODSON concur.